UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ROBERT SIMMONS, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 4:13-CV-02002-CEJ |
|  | ) |  |
| UNITED STATES OF AMERICA, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

## **MEMORANDUM**

This matter is before the Court on the *pro se* petition of Robert Simmons on a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In the alternative, Simmons requests that the Court conduct an Evidentiary Hearing. The United States has filed a response in opposition, and the issues are fully briefed.

### I. Procedural Background

On January 25, 2012, Simmons pled guilty to knowingly and intentionally distributing a mixture or substance containing heroin, in violation of 21 U.S.C. § 841(a)(1). *United States v. Simmons*, No. 4:11-CR-00442-CEJ, [Doc. #42 at 4]. The government agreed not to pursue a statutory enhancement under 21 U.S.C. § 851(a) in exchange for the defendant's guilty plea. *Id.*, [Doc. #27 at 1–2]. The parties further stipulated that the Court would not be bound by the plea agreement's terms. *Id.* at 1. On April 20, 2012, the Court sentenced Simmons to a 235-month term of imprisonment. *Id.*, [Doc. #39 at 2]. The judgment and sentence were affirmed on appeal. *Id.*, [Doc. #48].

On October 7, 2013, Simmons filed his present motion to vacate, pursuant to

28 U.S.C. § 2255. [Doc. #1]. In that motion, Simmons asserts a claim of ineffective assistance of counsel based on allegations that his attorney (1) erroneously advised him as to the predicted sentences associated with the government's plea offer, and (2) failed to communicate an earlier, more favorable plea offer to him. *Id.*

## II. Factual Background

It is undisputed that on December 1, 2010, Simmons knowingly distributed heroin to Betty Brown. *United States v. Simmons*, No. 4:11-CR-00442-CEJ, [Doc. #27 at 2]. That evening, Ms. Brown died of acute heroin intoxication.

On October 20, 2011, a grand jury indicted Simmons for distribution of heroin in violation of 21 U.S.C. § 841(a). According to the government, Michael Dwyer (Dwyer), counsel to Simmons, then approached the government regarding a joint sentence recommendation. [Doc. #5 at 2]. The government told Dwyer that it would be willing to recommend a fifteen-year sentence. *Id.* As a second option, the government offered to stipulate to a guideline sentence of 235-240 months and to allow Simmons to argue for a below-guideline sentence. *Id.*

The parties disagree about what occurred after the aforementioned discussions between Dwyer and the government. Simmons claims that Dwyer never communicated the fifteen-year offer to him. [Doc. #1 at 5]. In his affidavit, Dwyer states that he discussed both plea offers with Simmons on January 8 and January 24, 2013. [Doc. #7 at 2]. Specifically, Dwyer states that "[d]uring my discussions with Simmons on January 8 and January 24, 2013, I told him of the government's offer to recommend a 15-year sentence and my advice to reject this offer because I thought we could do better." *Id.* He further states that he "believed on the basis of our discussions that Simmons: (1) understood the proposed alternatives; (2)

2

thought a 15-year sentence was excessive and unacceptable; and (3) understood why I believed that there was a reasonable probability that the Court would impose a sentence less than 15 years of imprisonment." *Id.*

Simmons ultimately accepted the second offer at a change of plea hearing on January 25, 2012, and gave the following answers under oath:

> Q: [Judge] Mr. Simmons, have you had enough time to talk to your lawyer about this case?
>
> A: [Simmons] Yes, ma'am.
>
> Q: And you have talked to him about whether or not you should plead guilty?
>
> A: Yes, ma'am.
>
> Q: Are you satisfied with the way that Mr. Dwyer has handled the case?
>
> A: Yes, ma'am.

After an extended colloquy regarding the constitutional rights relinquished by his guilty plea, Simmons testified as follows:

> Q: Do you have any questions about the rights that you're giving up by pleading guilty?
>
> A: No, ma'am.
>
> Q: Now that you know what you're giving up, do you still want to plead guilty?
>
> A: Yes, ma'am.
>
> Q: Has anyone made any threats to you to force you to plead guilty?
>
> A: No, ma'am.
>
> Q: Has anyone made a promise to you about the sentence that you will receive?

3

> A: No, ma'am.
>
> Q: Apart from the plea agreement that you have with the government, have any promises been made to you in exchange for your guilty plea?
>
> A: No, ma'am.

The Court also informed Simmons of its discretion in sentencing.

> Q: Okay, Mr. Simmons, in this document, you and the government have agreed to certain provisions of the Sentencing Guidelines. I'm referring to Paragraph 6 of the agreement which begins on page six and ends on page seven. Do you understand that I'm not required to follow any recommendation that you and the government make concerning the guidelines?
>
> A: Yes, ma'am.
>
> Q: I will determine which sentencing guidelines apply in your case. And if you disagree with my decision, that will not give you the right to withdraw your guilty plea, do you understand?
>
> A: Yes, ma'am.
>
> Q: I will consider the Sentencing Guidelines and other factors in determining your sentence. If you receive a sentence that is worse than you expected, that also will not give you the right to withdraw your guilty plea. Do you understand?
>
> A: Yes, ma'am.
>
> Q: The penalties for this offense include a sentence of not more than 20 years in prison or a fine of not more than $1 million or both. Do you understand?
>
> A: Yes, ma'am.

*United States v. Simmons*, Case No. 4:11-CR-00442-CEJ, [Doc. #42 at 7, 9–10, 12–13].

Following the change of plea hearing, Dwyer wrote two letters to Simmons. In the first letter, dated March 6, 2012, Dwyer wrote that he was sending Simmons' plea agreement and apologized that it was "so delayed." [Doc. #1-2 at 16].

4

Simmons claims that this letter was the first time Dwyer "disclose[d] any relevant information concerning the terms of Simmons' plea agreement." [Doc. #1 at 9.]

In the second letter, dated March 26, 2012, Dwyer discussed what Simmons "bargained for in [his] plea agreement." [Doc. #1-2 at 18]. Specifically, Dwyer related that (1) Simmons would not be further prosecuted, (2) that the government would not allege the death resulting from the heroin sale in its indictment, which would require a mandatory minimum sentence of twenty years, (3) that the government would not file an information regarding Simmons' prior drug conviction, which would necessitate a mandatory life sentence, and (4) that the government would permit Simmons to request a below-guideline sentence. *Id.* at 18–19. Dwyer further wrote, "in sum, the essence of the plea agreement was that you avoided mandatory, statutory penalties, that would be higher than you face under the plea agreement." *Id.* Additionally, Dwyer offered five reasons for believing the Court would recommend a sentence "considerably less" than 235 months: (1) the government's recommendation of a 180-month sentence; (2) that Simmons' guideline range would have been 15-21 months had Ms. Brown not died; (3) that Ms. Brown was a long-time heroin addict who, by her medical training, knew of the dangers of heroin use; (4) that Simmons was a heroin addict who sold drugs primarily to support his habit; and (5) that Simmons was employed at the time of the offense. *Id.* Dwyer wrote that "[w]e will argue these factors vigorously in a sentencing memorandum to the court and at the time of sentencing. I cannot, however, give you a precise, specific number of months that Judge Jackson will impose because I know that she treats each case individually and cannot know precisely how these mitigating factors will influence her judgment." *Id.* at 20. In the

closing paragraph of the March 26 letter, Dwyer cautioned Simmons against challenging his initial plea agreement, stating "[i]f you decide to tell Judge Jackson, either by letter or orally at sentencing, that you were duped into signing the plea agreement and pleading guilty, you will undoubtedly make things much worse for yourself." *Id.* at 20.

On April 20, 2012, Simmons appeared for sentencing. Dwyer objected to a portion of the presentence report on the grounds that it "didn't reflect that, had [Simmons] not pled guilty, the government would have superseded to charge a 20-year mandatory minimum offense; and that he was also liable to an Information under Section 851 that would have mandated that the penalty be life imprisonment with no alternative for the Court." *United States v. Simmons*, Case No. 4:11-CR-00442-CEJ, [Doc. #42 at 19]. The Court overruled the objection. *Id.* at 23. Dwyer then presented arguments for a downward variance below the guideline range. *Id.* at 26–30, 35.

After hearing the parties' arguments the Court explained its reasons for a sentence within the guideline range:

> The Court: Now, the request has been made for a downward variance, and I believe that the arguments in favor of a downward variance are certainly significant. But I don't believe that a downward variance is appropriate in this case.
>
> And one of the reasons is that, as I said before, Mr. Simmons received a sentence of 15 years in prison for a drug-trafficking crime. He was released from prison on parole, and the fact that he faced the possibility of revocation of his parole and completion of the entire 15-year sentence did not deter him from going out to commit more crimes. The fact that Mr. Simmons was employed – legitimately employed. I mean – seems to be inconsistent with a claim he was simply selling drugs to get money to pay for his own drugs.

And Mr. Simmons went beyond being simply a heroin addict to a heroin distributor. And unfortunately, that did result in the death of Miss. Brown. I don't believe that Mr. Simmons intended to kill Miss Brown. I don't believe that he possessed the mental state that is required for a murder conviction. I believe that he provided these drugs to Miss Brown because he sold drugs, and she wanted drugs. She was a customer, and he was a seller. It's just that simple. But Congress has made it clear that when someone is in the business of selling drugs or giving drugs away or providing them by any means and if their conduct results in the death of someone else, then that is going to require some more serious consequences than if they had just sold them to someone who didn't die.

You are responsible for the effects and consequences of your behavior. So although I have considered all of the factors that have been presented to me as reasons for downward variance, I'm not persuaded that a downward variance would be appropriate; and I believe that a sentence within the guideline range would be sufficient but not greater than necessary to address the issues of punishment, deterrence, and incapacitation.

### III. Discussion

A prisoner may move for post-conviction relief under 28 U.S.C. § 2255 for "transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal, and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Specifically, § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

A federal prisoner may therefore assert a claim that his conviction should be set aside under § 2255 if his Sixth Amendment right to "effective assistance of competent counsel" is violated. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984); *McMann v. Richardson*, 397 U.S. 759, 771 (1970); *Missouri v. Frye*, 132 S. Ct. 1399, 1404 (2012).

*Strickland* defined the burden a convicted defendant faces in asserting a breach of this Sixth Amendment guarantee. 466 U.S. at 687. To prevail on an ineffective assistance claim, a movant must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. *Id.* at 687–88. With respect to the first *Strickland* prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. *Id.* at 689. In *Strickland*, the Court described the standard for determining an ineffective assistance claim:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690.

To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The failure to show prejudice is dispositive, and a court need not address the reasonableness of counsel's performance in the absence of prejudice. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

The *Strickland* standards for ineffective assistance of counsel apply in the guilty plea context. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). This is because the guilty plea constitutes a critical stage of the criminal proceeding. *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010). The Supreme Court has held that counsel's role in the rejection or acceptance of a plea offer, the communication of an alternative plea offer, and deportation or sentencing consequences of a plea, fall within the purview of the *Strickland* inquiry. *See Missouri v. Frye*, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Padilla*, 130 S. Ct. 1473.

### A. <u>Standard for an Evidentiary Hearing</u>

"A prisoner is entitled to an evidentiary hearing on a section 2255 motion unless the motion, files and records of the case conclusively show that the prisoner is not entitled to relief." *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995). "No hearing is required, however, 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (quoting *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) (internal quotations omitted)). A district court may therefore deny an evidentiary hearing where "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief,

9

or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen*, 68 F.3d at 240. Notably, contradictory affidavits are not always sufficient to create a fact dispute necessitating an evidentiary hearing. *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000). There may be no reason to question the credibility of one party's affidavit whereas another may be inconsistent or consists of "'a single, self-serving, self-contradicting statement.'" *Id.* at 1032–33 n.6.

### B. <u>Grounds for Relief</u>

#### (1) Ground One

In his first ground for relief, Simmons alleges ineffective counsel on the basis that his attorney misrepresented the anticipated length of his sentence, thereby inducing him to accept the government's plea agreement. [Doc. #1 at 13]. Consequently, Simmons claims, his plea was "not truly knowing, intelligent, nor voluntary." *Id.* at 11.

As a preliminary matter Simmons misconstrues the standards for a voluntary and intelligent plea. "[T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments." *McMann v. Richardson*, 397 U.S. 759, 769 (1970). *McMann* emphasized, "that a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retroactive examination in a post-conviction hearing." *Id.* at 770. Rather, the advice of an attorney need only be "within the range of competence demanded by attorneys in criminal cases," given that "uncertainty is inherent in predicting court decisions." *Id.* at 770–71; *see also Tollett v. Henderson*, 411 U.S. 258

(1973). And an involuntary plea is one that is "compelled within the meaning of the Fifth Amendment," (*North Carolina v. Alford*, 400 U.S. 25, 31 (1970)), rather than a "voluntary expression of [a defendant's] own choice." *See Brady v. United States*, 397 U.S. 742, 748 (1970).

Here, Simmons has not shown that "'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" *Nave v. Delo,* 62 F.3d 1024, 1035 (8th Cir. 1995) (quoting *Lawrence v. Armontrout*, 961 F.2d 113, 115 (8th Cir. 1992)). First, in his affidavit, Dwyer states that he "reviewed the proposed plea agreement" with Simmons on two occasions before his plea. [Doc. #7 at 1]. He further attests that he thought Simmons "understood why [he] believed that there was a *reasonable possibility* that the Court would impose a sentence less than 15 years of imprisonment." [Doc. #7 at 2 (emphasis added)]. Second, in the March 26, 2012 letter, counsel provided reasonable grounds for his belief that the Court would impose a sentence below 235 months. [Doc. #1-2]. Dwyer specifically stated that although he would present all mitigating factors to the Court, he could not "give [Simmons] a precise, specific number of months that Judge Jackson will impose . . ." [Doc. #1-2 at 3]. The fact that the Court imposed a longer sentence than counsel anticipated does not render his advice unreasonable or necessitate a finding that his performance was below the "range of competence demanded of attorneys in criminal cases." *Theus v. United States*, 611 F.3d 441, 446 (8th Cir. 2010); *see also Ball v. United States*, No. 12-3394-CV-S-RED, 2013 WL 1489474, at *2 (W.D. Mo. Apr. 10, 2013) (discussing how counsel's advice regarding a sentence "while ultimately incorrect, was reasonable"). Moreover, as the plea

11

transcript demonstrates, any misperception that Simmons may have had regarding his sentence was cured by the Court's in-depth explanation of its discretion in his case. *See Mueller v.* Wallace, No. 4:12-CV-1199-HEA, 2014 WL 7003779, at *8 (E.D. Mo. Dec. 10, 2014). For those reasons, Simmons' plea was knowing and intelligent. Moreover, Simmons has not shown that the plea was not made intelligently and voluntarily.

And finally, even if this Court were to reach the second prong of the *Strickland* test, there is no evidence of prejudice here. The Court was not required to accept any sentencing recommendation agreed to by the parties. *See* Fed. R. Crim. P. 11(c)(5) (describing procedure to be followed when court rejects a plea agreement under Rule 11(c)(1)(C) for a specific sentence or sentencing range). Also, the sentencing hearing transcript demonstrates that the Court saw no reason to depart below the sentencing guidelines, regardless of the recommendations of the parties. *See Davis v. Kelley*, No. 5:13-CV-00129-SWW-JTR, 2015 WL 1423866, at *5 (E.D. Ark. Mar. 27, 2015) (holding that even if the defendant *had* agreed to a plea offer, there was no showing that "the trial court would have accepted it," and consequently that the petitioner did not demonstrate prejudice). Accordingly, no prejudice has been demonstrated as "[i]t is not sufficient for a defendant to show that the error(s) had some 'conceivable effect' on the result of the proceeding because not every error that influences or affects a proceeding undermines the reliability of the outcome of the proceeding." *Odem v. Hopkins*, 382 F.3d 846, 850 (8th Cir. 2004) (quoting *Strickland v. Washington*, 466 U.S. 668, 693 (1984)).

**(2) Ground Two**

In his second ground for relief, Simmons alleges that counsel failed to inform him of a more favorable plea offer. [Doc. #1 at 17]. Simmons argues that had he been aware of the 180-month offer, he would have accepted it. *Id.* at 12.

"[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). Accordingly, if a plea offer is not communicated to a criminal defendant, the first factor of the *Strickland* test is met. *Id.* at 1408–09. To satisfy the prejudice prong of the *Strickland* test, the defendant in this sort of case need not prove that "he would have proceeded to trial absent ineffective assistance," but rather, "must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Id.* at 1409–10. Moreover, "[d]efendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it . . ." *Id.*

Simmons' claim of ineffective assistance of counsel on this second ground fails. There is a factual dispute that would affect the determination of whether Simmons received effective assistance of counsel. However, the Court need not reach this factual question or hold an evidentiary hearing. This is because the second *Strickland* factor is not met here. Simmons has not shown prejudice. In light of the stated reasons for a sentence within the 235-240 month guideline range, it is evident that the Court would not have accepted a plea agreement for a lesser sentence. Therefore, Simmons has not demonstrated "a reasonable probability" that an alternative plea agreement "would have been entered without .

13

. . the trial court refusing to accept it."[1] *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012).

### III. Conclusion

For the reasons discussed above, the Court concludes that motions and the files and records of this case conclusively show that Simmons is not entitled to relief under 28 U.S.C. § 2255 based on any of the claims he asserts his motion to vacate. Therefore, the motion will be denied without an evidentiary hearing. *See Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995). Additionally, the Court finds that Simmons has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253.

An appropriate Order will accompany this Memorandum.

_____
CAROL E JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 24th day of October, 2016.

---

[1] Simmons' citation to *Burrage v. United States*, 134 S.Ct. 881 (2014), in his reply brief [Doc. #9], is not persuasive. There is no indication in the record that the Court would have found that the heroin Simmons sold was not "an independently sufficient cause of the victim's death." *Burrage*, 132 S. Ct. at 892.